**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JANEL M. SHAW,**

                              **Plaintiff,**                    **7:11-cv-1463**
                                                              **(GLS)**

              **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Conboy, McKay Law Firm              LAWRENCE D. HASSELER,
307 State Street                    ESQ.
Carthage, NY 13619


**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN           JASON P. PECK
United States Attorney              Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**


**<u>MEMORANDUM-DECISION AND ORDER</u>**

## I.  <u>Introduction</u>

Plaintiff Janel M. Shaw challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g).[1] (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Shaw's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II.  <u>Background</u>

On October 22, 2002, Shaw filed an application for child's insurance benefits (CIB) and SSI under the Social Security Act ("the Act"), alleging disability since April 1, 1998.  (*See* Tr.[2] at 128-29, 630-31.)  After the applications were denied, Shaw requested a hearing before an Administrative Law Judge (ALJ), which was held on November 15, 2004 before ALJ John Lischak.  (*See id.* at 57-61, 62-63, 643-717.) Subsequently, ALJ  Lischak issued an unfavorable decision and found that

_____

[1] Although Shaw's Complaint only references 42 U.S.C. § 405(g), section 1383(c)(3) of Title 42 renders that provision applicable to judicial review of SSI claims.

[2] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 8.)

Shaw was not disabled.  (*See id.* at 36-48.)  At Shaw's request, the Social Security Administration Appeals Council remanded the case back to ALJ Lischak, who, upon reconsideration, again denied Shaw's claim.  (*See id.* at 12-26, 53-56, 77-92, 713-86.)  After the Appeals Council's subsequent denial of review, Shaw commenced an action in federal district court and, on consent of the parties, the matter was remanded for further administrative proceedings.  (*See id.* at 8-11, 816-17.)  Thereafter, the Appeals Council again remanded the case for a new hearing, which was conducted before ALJ Elizabeth W. Koennecke.  (*See id.* at 813-15, 1326-58.)  On June 7, 2010, ALJ Koennecke (hereinafter "the ALJ") issued a decision denying benefits, which became the Commissioner's final determination upon the Appeals Council's denial of review.  (*See id.* at 787-89, 793-805.)

Shaw commenced the present action by filing her Complaint on December 15, 2011 wherein she sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 7, 8.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 12, 15.)

### III.  **Contentions**

Shaw contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (*See* Dkt. No. 12 at 9-24.)  Specifically, Shaw claims that the ALJ: (1) erred in failing to find that her lower back pain and chest pain constituted severe impairments; (2) improperly found that her intellectual functioning did not meet listing 12.05(C); (3) incorrectly found that she could perform sedentary work; (4) failed to properly assess her mental impairments; (5) mistakenly evaluated her credibility; and (6) inappropriately dismissed the assessment of the vocational expert (VE).  (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence.  (*See* Dkt. No. 15 at 12-24.)

### IV.  **Facts**

The court adopts the parties' undisputed factual recitations.  (*See* Dkt. No. 12 at 1-9; Dkt. No. 15 at 2-9.)

### V.  **Standard of Review**

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a

---

[3] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.

full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of*

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

Mar. 19, 2008).  In addition to showing a disability under the five-step

sequential analysis, a claimant seeking CIB must also be the child of an

insured person who is entitled to old-age or disability benefits or who has

died, be dependent on the insured, be unmarried, and, as relevant here,

demonstrate that her disability began before age twenty-two.  *See* 20

C.F.R. § 404.350(a).

## VI. **Discussion**

### A.    **Severe Impairment Findings**

First, Shaw contends that the ALJ should have found that her lower

back pain and chest pain with shortness of breath were severe

impairments.  (*See* Dkt. No. 12 at 9-11.)  The Commissioner counters, and

the court agrees, that even if the ALJ should have found these conditions

to be severe impairments, this was, at most, a harmless error because the

Residual Functional Capacity (RFC) finding adequately addressed any

work-related limitations resulting from them.  (*See* Dkt. No. 15 at 12-13.)

5

A claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521(b)(1); 416.921(b)(1).  "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).  Indeed, when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities," a finding of "not severe" is warranted.  SSR 85-28, 1985 WL 56856, at *3 (1985); *see* 20 C.F.R. §§ 404.1521(a), 416.921(a).  Notably, the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later

6

considers the impairment in his residual functional capacity determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

Here, the ALJ determined that Shaw's chest pain was a non-severe impairment after noting that she was examined in October 2007 and found to have normal coronary arteries and a normal ejection fraction and that her complaints of chest pain were deemed noncardiac in nature. (*See* Tr. at 801, 1103.)  In addition, as a January 2010 MRI of Shaw's lumbar spine showed relatively minor degenerative changes, the ALJ concluded that her back pain was also not a severe impairment. (*See id.* at 801, 1270.) During the subsequent RFC determination, the ALJ considered the opinions of the physicians who had treated or examined Shaw for both of these conditions. (*See id.* at 324-27, 387, 513-17, 526-32, 550, 801-02.) As the ALJ proceeded with the disability analysis and included Shaw's severe and non-severe impairments in the RFC determination, there is no basis to remand this matter based upon the ALJ's step two analysis. *See Tryon*, 2012 WL 398952, at *4.

## B.    Listed Impairment

Shaw next claims that the ALJ erred when she failed to find that Shaw's intellectual functioning met listing 12.05(C) arguing that the ALJ "defaulted to a physician's legal conclusions regarding the applicability of listings to [her] conditions." (Dkt. No. 12 at 12.)  The court is not persuaded by Shaw's argument.

At the third step of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  To satisfy listing 12.05(C), which pertains to mental retardation, Shaw must demonstrate that she suffers from "[a] valid verbal, performance, or full scale IQ of [sixty] through [seventy] and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C).  Notably, while "standardized intelligence tests may provide data that help verify the presence of mental retardation," they "are only part of the overall assessment," and "the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  *Id.* § 12.00(D)(6)(a).

In addition, to establish disability under subsection 12.05(C), Shaw had to first make a threshold showing that she possessed "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" prior to age twenty-two.  *Id.* § 12.05; *see id.* § 12.00(A).  "[D]eficits in adaptive functioning 'denotes an inability to cope with the challenges of ordinary everyday life.'" *Carrube v. Astrue*, No. 3:08-CV-0830, 2009 WL 6527504, at *4 (N.D.N.Y. Dec. 2, 2009) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)).  This includes consideration of a "claimant's effectiveness in areas such as social skills, communication, and daily living skills."  *West v. Comm'r of Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007). Finally, in making her determination, an ALJ may rely "upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).

Here, the ALJ, relying on the opinion of non-examining psychologist, Ralph Sibley, found that Shaw's impairments did not qualify under listing 12.05(C).  (*See* Tr. at 801.)  Notably, Dr. Sibley's opinion was based on

intelligence testing performed by examining psychologist Dennis Noia, which placed Shaw in the borderline range of intelligence with verbal IQ at seventy-six, performance IQ at seventy-four, and full scale IQ at seventy-three.  (*See id.* at 520.)  However, Dr. Sibley testified that "there's a standard of error of measurement of about three points on those verbal[,] performance[,] and full scale IQ [test results]."  (*Id.* at 1334.)  Dr. Sibley further clarified that "when somebody has a full scale IQ of [seventy-three], the only thing we can say with confidence is that their true score falls somewhere in the range from [seventy] to [seventy-six]."  (*Id.*)  Based on this testimony, Shaw argues that she has a qualifying IQ score to meet Listing 12.05(C).  (*See* Dkt. No. 12 at 12-13.)

Contrary to Shaw's argument that the only reason Dr. Sibley found her not to meet Listing 12.05(C) was a lack of evidence of the onset of her developmental delay before age twenty-two, (*see* Dkt. No. 12 at 14), Dr. Sibley testified that in addition to Shaw's IQ scores, he considered her activities, such as raising a child as a single parent, changing her residence, working part-time for the Department of Social Services, and studying for her GED.  (*See id.* at 1334.)  According to Dr. Sibley, these activities did not "give [him] the image of a person who's significantly

cognitively limited." (*Id.*)  Indeed, the record shows that Shaw's activities of daily living include dressing, bathing, and grooming herself, shopping, doing laundry, general cleaning, preparing food, managing money, driving, taking public transportation, and socializing with friends and family.  (*See* Tr. at 520-21.)  She also reported doing chores, taking care of her daughter, watching television, and reading.  (*See id.* at 521.)

In addition to Dr. Sibley's opinion, the record contains Dr. Noia's opinion that, among other things, Shaw was capable of understanding and following simple instructions, performing simple and some complex tasks, maintaining attention and concentration, learning new tasks, and making appropriate decisions.  (*See id.*)  Dr. Noia concluded that his examination of Shaw was consistent with borderline intellectual functioning and that Shaw's "[v]ocational difficulties appear to be primarily caused by medical problems."  (*Id.*)

Ultimately, the court concludes that the ALJ's finding—that Shaw's mental impairments do not meet or medically equal the requirements of listing 12.05(C)—is supported by substantial evidence,[4] as Shaw's IQ

---

[4] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.

scores were not within the defined parameters and, further, she did not

possess the required deficits in adaptive functioning.  (*See* Tr. at 801.)  The

court rejects Shaw's argument that the ALJ failed to review the medical

evidence and make her own determination regarding Shaw's intellectual

deficit.  It is noted that, a listing determination may still be upheld despite

"the absence of an express rationale," where "portions of the . . . decision

and the evidence . . . indicate that [the ALJ's] conclusion was supported by

substantial evidence."  *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir.

1982).  Thus, in spite of the brevity of the ALJ's Listing analysis, her

examination of the evidence under Step two and Step four of the sequential

analysis provides substantial support for the determination.  (*See* Tr. at

800-03.)

## C.   **RFC Determination**

Next, Shaw contends that "[n]o substantial evidence supports the

Commissioner's conclusion that [she] can perform sedentary work."  (Dkt.

No. 12 at 15.)  Specifically, she claims that the ALJ erred in determining

her RFC by failing to: (1) include the requirement of a sit-stand option; (2)

incorporate any limitations regarding Shaw's obesity; (3) acknowledge or

---

1990) (internal quotation marks and citation omitted).

incorporate Shaw's need for frequent breaks; and (4) account for the amount of work that Shaw would have to miss as a result of her conditions. (*See id.* at 15-17.)  In addition, Shaw argues that even as written, the ALJ's RFC assessment is not consistent with a full range of sedentary work, because the ALJ determined that she cannot sit for more than five hours in a workday.  (*See id.* at 17.)  The Commissioner counters that the ALJ correctly determined that Shaw could perform a limited range of sedentary work and the testimony of the VE demonstrates that sedentary jobs which Shaw could perform exist, despite her functional limitations.  (*See* Dkt. No. 15 at 15-16.)  The court agrees with the Commissioner.

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* §§ 404.1545(a)(3), 416.945(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 486 (2d. Cir. 2012).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

13

Here, the ALJ determined that Shaw retained the RFC to lift, carry, push, or pull up to ten pounds and, in an eight-hour work day, sit for up to five hours, as long as she has the ability to get up and stretch, stand for up to four hours, and walk for up to four hours.  (*See* Tr. at 801.)  The ALJ further concluded that Shaw could only sit, stand, or walk for up to one hour at a time uninterrupted.  (*See id.*)  In addition, the ALJ found that Shaw could maintain attention and concentration for extended periods, maintain regular attendance, and complete a normal work day and work week.  (*See id.*)

Contrary to Shaw's argument, "even with a sedentary occupational base that has been eroded," an individual may still be able to perform a number of occupations that exist in significant numbers.  SSR 96-9p, 61 Fed. Reg. 34,478, 34,481 (July 2, 1996).  Thus, despite finding that she could not sit for six hours in a work day and needed to alternate between sitting and standing, the ALJ did not err in concluding that Shaw was not disabled after consulting with a VE.  *See id.* at 34,482; *see infra* Part VI.F. In addition, the ALJ explicitly noted that the physicians who examined or treated Shaw, and whose opinions she relied on in forming the RFC determination, took into account her obesity.  (*See* Tr. at 803.)  Thus, there

is no merit to Shaw's argument that the ALJ failed to incorporate limitations resulting from her obesity into the RFC determination. (*See* Dkt. No. 12 at 16.)

With respect to Shaw's argument that she requires frequent breaks throughout the work day, the ALJ specifically found that she did not need to take such breaks due to her medical impairments, citing Shaw's testimony that, in her current employment, she takes one fifteen to twenty minute break every hour to have a cigarette. (*See* Tr. at 803, 1355.) Thus the ALJ refused to credit her testimony that these cigarette breaks also allow her to relax and are necessary due to her physical and mental impairments. (*See id.* at 1356-57.) Moreover, although Dr. Sibley testified that Shaw's borderline intellectual functioning might impair her ability to maintain focus on a single task for more than two hours, Dr. Noia opined that Shaw could maintain attention and concentration for tasks and could regularly attend to a routine and maintain a schedule. (*See id.* at 521, 1336.) Lastly, although Shaw testified that she had missed various amounts of time from her current employment due to her child's illness, an accident in which she fell down the stairs, and her back problems, the ALJ found that, despite her medical impairments, Shaw could maintain regular attendance and

15

complete a normal work day and work week.  (*See id.* at 801, 1355.)  As the ALJ's credibility analysis is supported by substantial evidence, *see infra* Part VI.E., and the record contains no medical evidence—including opinion evidence—that Shaw's medical conditions would require frequent absences from work, the court discerns no error in her determination.

In sum, substantial evidence supports the RFC determination and, therefore, it will not be disturbed.

**D.   Evaluation of Mental Impairments**

Shaw also argues that the ALJ "failed to follow required steps when analyzing [her] depression, anxiety, and diminished intellectual capacity." (Dkt. No. 12 at 18.)  According to Shaw, the ALJ erred in: (1) failing to adequately review the evidence related to Shaw's mental conditions; (2) failing to issue her own findings regarding Shaw's functional limitation and, instead, deferring to the findings of Dr. Sibley; (3) failing to make her own determination with respect to the listings; and (4) forming her RFC assessment with respect to Shaw's ability to maintain attention and concentration and maintain regular attendance and complete a normal work day and workweek.  (*See id.* at 18-22.)  The Commissioner responds that the ALJ properly considered Shaw's mental impairments and that her

conclusions are supported by substantial evidence.  (*See* Dkt. No. 15 at

16-21.)  Again, the court agrees with the Commissioner.

An ALJ's determination of a claimant's mental functional limitations

must reflect his application of the "special technique" set out in 20 C.F.R.

§§ 404.1520a(c)(3) and 416.920a(c)(3), which requires the ALJ to make a

specific finding regarding the claimant's functional limitation with respect to

four broad functional areas: "[a]ctivities of daily living; social functioning;

concentration, persistence, or pace; and episodes of decompensation."

After rating these functional areas and determining that the claimant suffers

from a severe mental impairment, the ALJ must "then determine if it meets

or is equivalent in severity to a listed mental disorder . . . by comparing the

medical findings about [the] impairment(s) and the rating of the degree of

functional limitation to the criteria of the appropriate listed mental disorder."

20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  The mental RFC

assessment used at steps four and five of the sequential evaluation

process requires the ALJ to, among other things, engage in a more

detailed assessment of various functions contained in the broad categories

found in paragraphs B and C of the adult mental disorders listings in §

12.00 of the Listing of Impairments.  *See* SSR 96-8p, 61 Fed. Reg. 34,474,

34,477 (July 2, 1996).

Here, at step two of the sequential analysis, the ALJ determined that Shaw's mental impairments imposed mild restrictions on her activities of daily living, moderate limitations on her social functioning, and moderate limitations on her concentration, persistence or pace and that she had suffered from no episodes of decompensation.  (*See* Tr. at 800-01.)  This determination was supported by the opinion of Dr. Sibley, as well as the non-examining State agency medical consultant, Dr. B.L. Perkus.  (*See id.* at 340, 1230, 1335.)  As discussed above, at Step three of the sequential evaluation, the ALJ appropriately determined that Shaw's mental impairments do not meet or medically equal the requirements of the relevant listings.  *See supra* Part VI.B.  Finally, at Step four, the ALJ determined that Shaw's mental impairments left her with the ability to "understand, remember, and carry out simple instructions, maintain attention and concentration for extended periods, maintain regular attendance, work with others without being distracted, complete a normal work day and work week, get along with co-workers and supervisors, and respond appropriately to changes in the work setting."  (*See id.* at 801.)

Contrary to Shaw's arguments, although she did not repeat all of the

medical evidence in the opinion, the ALJ noted that Shaw had been diagnosed with borderline intellectual functioning and received medication and counseling for depression and anxiety and cited the applicable records with respect to those impairments.  (*See id.* at 800.)  Further, the ALJ considered the opinions of Drs. Perkus, Noia, and Sibley with respect to Shaw's mental impairments and, indeed, those opinions substantiate her assessment of Shaw's RFC.  (*See id.* at 344-46, 518-22, 800, 802-03, 1229-36, 1332-42.)  While Shaw takes issue with the ALJ's reliance on Dr. Sibley's opinion over that of her treating mental health professionals, Dr. Sibley's opinion is based on a review of the complete case record, including the assessments of Drs. Noia and Perkus.  (*See id.* at 800.); *see* SSR 96-6p, 61 Fed. Reg. 34,466, 34,468 (July, 2, 1996).  Further, it is clear that the ALJ reviewed the medical evidence, the various opinion evidence, and Shaw's activities of daily living in making her RFC determination and did not "vest her fact-finding authority in another agent."  (Dkt. No. 12 at 20; *see* Tr. at 801-03.)

      As for the ALJ's failure to acknowledge the opinion of a treating social worker, Elizabeth Davis, who opined, in February 2007 treatment notes, that Shaw was "too symptomatic to be able to function [consistently] in a

work setting," (*see* Tr. at 1113), social workers are not "acceptable medical

sources" whose medical opinions may be entitled to controlling weight, but

rather are considered "other sources" whose opinions "should be evaluated

on key issues such as impairment severity and functional effects, along

with the other relevant evidence in the file."  SSR 06-03p, 2006 WL

2329939, at *2-3 (Aug. 9, 2006); *see* 20 C.F.R. §§ 404.1513(a), (d)(3),

416.913(a), (d)(3).  Notably, the ALJ did cite to Davis' treatment records,

and specifically noted that, in March 2008, Davis reported that Shaw's

mood was stable and she was enjoying her part-time work.  (*See* Tr. at

803, 1135.)  Further, despite the ALJ's failure to specifically note Shaw's

various Global Assessment of Functioning scores[5] as rated by Davis, in

addition to the ALJ's citation to Davis' treatment records containing the

scores, Dr. Sibley testified that he had reviewed the scores and, therefore,

his opinion—which the ALJ relied on—included a consideration of such

evidence.  (*See id.* at 1161, 1175, 1180, 1305, 1308,1336-38.)  Finally, as

noted above, substantial evidence supports the ALJ's conclusion that Shaw

retained the RFC to maintain attention and concentration for extended

---

[5] The Global Assessment of Functioning Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004) .

periods and maintain regular attendance and complete a normal work day and workweek.  (*See id.* at 344-45, 521, 1233); *see supra* Part VI.C.

Accordingly, the ALJ properly relied on substantial evidence in the record to assess Shaw's mental condition pursuant to the psychiatric review technique.

### E.   Credibility Assessment

Next, Shaw contends that the ALJ failed to properly assess her credibility.  (*See* Dkt. No. 12 at 22-23.)  Shaw's sole argument with respect to the ALJ's credibility determination is that, because objective evidence supports her allegations that she suffers from "obesity, diabetes, borderline intellectual functioning, depressive disorder, anxiety disorder, low back pain, and chest pain with shortness of breath[,] which could reasonably be expected to produce the type of symptoms that she alleges[,] the ALJ was not entitled to dismiss [her] allegations regarding the severity of her symptoms."  (*Id.*)  Again the court disagrees.

An ALJ must consider a claimant's subjective complaints of limitations resulting from her impairments, including those from pain, in gauging her RFC.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  However, an individual's statement as to pain or other symptoms is not

alone conclusive evidence of disability.  *See id.*  The Commissioner is

obligated to evaluate all of a claimant's symptoms, "including pain, and the

extent to which [those] symptoms can reasonably be accepted as

consistent with the objective medical evidence, and other evidence."  20

C.F.R. §§ 404.1529(a), 416.929(a).  Ultimately, "[t]he reasons for the

credibility finding must be grounded in the evidence and articulated in the

determination or decision."  SSR 96-7p, 61 Fed. Reg. 34,483, 34,485-86

(July 2, 1996).  Thus, "after weighing the objective medical evidence in the

record, the claimant's demeanor, and other indicia of credibility," an ALJ

may reject the claimant's subjective allegations regarding limitation as long

as she sets forth her "reasons with sufficient specificity to enable [the court]

to decide whether the determination is supported by substantial evidence."

*Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation

marks and citation omitted).

     In this case, the ALJ's determination that Shaw's "subjective

complaints [are] less than fully credible" is supported by substantial

evidence in the record.  (Tr. at 803)  Specifically, after noting the medical

evidence, including the opinion evidence, the ALJ considered Shaw's

activities of daily living, including her current work schedule of eighteen to

22

twenty-one hours per week, and her noncomplaince with recommended treatments for diabetes and obesity.  (*See id.* at 800-03.)  Accordingly, the ALJ's credibility determination is both sufficiently specific, and more importantly, supported by substantial evidence.  *See Lewis*, 62 F. Supp. 2d at 651*; see also Attendorn v. Comm'r of Soc. Sec.*, No. 1:12-CV-5, 2012 WL 6680375, at *14 (N.D.N.Y. Nov. 2, 2012).  As such, the ALJ's credibility findings are conclusive.

## F.   <u>Vocational Expert</u>

Lastly, Shaw claims that the ALJ dismissed the assessment of the VE that (1) a person who cannot sit for more than five hours in a work day could not work as an addresser or preparer; and (2) a person would be unable to work if their condition forced them to be off-task at various times throughout the day totaling up to one hour of time.  (*See* Dkt. No. 12 at 23-24.)  The court finds no merit in this argument, largely for reasons already articulated.

A hypothetical question posed by the ALJ must be based on substantial evidence; if it is, the ALJ may rely on a VE's responsive testimony in rendering a determination about the claimant's ability to do other work.  *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *Wavercak v.*

23

*Comm'r of Soc. Sec.*, No. 5:07-cv-482, 2010 WL 2652201, at *5 (N.D.N.Y. June 25, 2010).  Here, as explained above, the RFC and credibility determinations are supported by substantial evidence, and, thus, Shaw's arguments with respect to unscheduled breaks are meritless.  *See supra* Part VI.C-E.  The response to the hypothetical question asked of the VE—which accounted for, among other things, an individual who can, in an eight hour period, sit for up to five hours and stand for four hours, both for one hour at a time without interruption, and walk for up to four hours, for thirty minutes to one hour at a time—provided the ALJ with substantial evidence regarding the availability of other work in the national economy. (*See* Tr. at 1346-49.)  Although Shaw argues that the VE testified to only one job existing in the national economy that she would be able to perform despite her limitations, as opposed to the three noted by the ALJ, (*see id.* at 804-05, 1350), the finding of one job is sufficient to demonstrate that there is other work that Shaw could perform.  *See* 20 C.F.R. §§ 404.1566(b), 416.966(b); *Martin v. Comm'r of Soc. Sec.,* No. 5:06-CV-720, 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008). Accordingly, the ALJ's determination was free from error.

## G.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Shaw's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 28, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

25